10-4229-cv (L)
Bacolitsas v. 86th and 3rd Owner, LLC

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
_____

August Term, 2011

(Argued: November 2, 2011                     Decided: December 19, 2012)

Docket Nos. 10-4229-cv(L); 10-5230-cv(CON)
_____

VASILIS BACOLITSAS, SOFIA NIKOLAIDOU,

*Plaintiffs-Counter-Defendants-Appellees*,

*-v.-*

86TH & 3RD OWNER, LLC,

*Defendant-Counter-Claimant-Appellant*,

MICHAEL, LEVITT & RUBINSTEIN, LLC, ESCROW AGENT,

*Defendant-Appellant*.
_____

Before:
         SACK, HALL, LOHIER, *Circuit Judges.*
_____

Sellers appeal from a judgment of the United States District Court for the Southern

District of New York (Castel, *J.*), granting summary judgment to Purchasers on their claim for

revocation of an executed purchase agreement for a luxury condominium unit in New York City,

on the grounds that the agreement failed to comport with the Interstate Land Sales Full

Disclosure Act, 15 U.S.C. §§ 1701-20.  We conclude that the agreement is consistent with the

requirements of the Act and therefore REVERSE the judgment of the district court and

1

REMAND with instructions that judgment be entered for Sellers. We DISMISS as moot

Purchasers' related appeal challenging denial of attorneys' fees, Docket No. 10-5230-cv.

REVERSED AND REMANDED.

_____

JEFFREY R. METZ (Adam Leitman Bailey, John M. Desiderio, William J. Geller, Courtney J. Killelea, *on the brief*), Adam Leitman Bailey, P.C., New York, New York, *for Plaintiffs-Counter-Defendants-Appellees*.

MARK WALFISH (Adrienne B. Koch and Thomas M. Lopez, *on the brief*), Katsky Korins LLP, New York, New York, *for Defendant-Counter-Claimant-Appellant* 86th & 3rd Owner, LLC *and Defendant-Appellant* Michael, Levitt & Rubinstein, LLC.

LI YU, Assistant United States Attorney (Sarah S. Normand, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Amicus Curiae* The United States of America.[1]

Robert D. Kaplan, Friedman Kaplan Seiler & Adelman LLP, New York, New York, *for Amicus Curiae* The Real Estate Board of New York.

_____

HALL, *Circuit Judge*:

This appeal provides us with an opportunity to clarify the requirements of the Interstate

Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701-20, a statute that, while enacted

more than forty years ago, has received little attention from the federal courts until recently. In

basic terms, ILSA protects individual buyers or lessees who purchase or lease lots in large,

uncompleted housing developments, including condominiums, by mandating that developers

---

[1] When this appeal was originally briefed, the United States filed an appearance as *amicus curie* on behalf of the United States Department of Housing and Urban Development ("HUD"). Following passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 11-203 (2010) (codified in part at 12 U.S.C. §§ 5481-5603), however, the rulemaking and other authority historically vested in HUD under the Interstate Land Sales Full Disclosure Act was transferred to the newly created Consumer Financial Protection Bureau ("CFPB"). *See* 12 U.S.C. § 5581 (transferring "[a]ll consumer protection functions" under the Interstate Land Sales Full Disclosure Act to the CFPB). The government has notified us that the CFPB has adopted all of HUD's arguments.

2

make certain disclosures. If a developer fails to provide these disclosures, ILSA permits buyers or lessees, under certain circumstances, to revoke their purchase or lease agreements within a designated period from the date of signing. 15 U.S.C. § 1703(d). As one of our sister circuits observed recently, it is this feature of ILSA that has made the statute "an increasingly popular means of channeling buyer's remorse into a legal defense to a breach of contract claim." *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 852 (11th Cir. 2009).

In the present case, Plaintiffs-Counter-Defendants-Appellees Vasilis Bacolitsas and Sofia Nikolaidou ("Plaintiffs") sought to avail themselves of § 1703(d)'s terms by bringing suit for revocation of a purchase agreement they executed with Defendant-Counter-Claimant-Appellant 86th & 3rd Owner, LLC and Defendant-Appellant Michael, Levitt & Rubinstein, LLC ("Defendants") for a luxury condominium unit in New York City, asserting that the agreement failed to comport with ILSA's disclosure requirements. Plaintiffs alleged, *inter alia*, that the purchase agreement was revocable because it did not contain "a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording." 15 U.S.C. § 1703(d)(1). The district court granted summary judgment to Plaintiffs, concluding that because their purchase agreement was not recordable under state law, it did not comply with § 1703(d)(1) and was therefore subject to revocation. Addressing a question of first impression in this Court, we disagree and hold that § 1703(d)(1) requires the description and not the agreement itself be "in a form acceptable for recording" and that the description at issue in this case satisfies ILSA's requirements. We therefore REVERSE the district court's judgment and REMAND with instructions that the district court enter judgment for Defendants.[2]

---

[2] Plaintiffs-Counter-Defendants-Appellees Vasilis Bacolitsas and Sofia Nikolaidou have filed a separate appeal from a post-judgment order of the district court denying their motion for attorneys' fees. We consolidated that appeal with the present case for purposes of decision, and

# BACKGROUND

The facts are undisputed.  The Brompton Condominium ("Brompton") is a luxury

condominium building located at 86th Street and Third Avenue in Manhattan, New York.

Defendant 86th & 3rd Owner, LLC (the "Sponsor") sells, offers, and advertises units in the

Brompton, and Defendant-Appellant Michael, Levitt & Rubinstein, LLC (the "Escrow Agent") is

the Sponsor's escrow agent for all purchases of units in the building.  Consistent with its

obligations under ILSA, *see* 15 U.S.C. §§ 1704-05; 24 C.F.R. §§ 1710.100, 1710.105-18, the

Sponsor previously filed with the United States Department of Housing and Urban Development

("HUD") a statement of record containing the property report, and, as required by statute, the

property report provided all potential purchasers of units, including Plaintiffs, with certain

information and warnings about the Brompton.[3]  In addition, the Sponsor previously filed the

condominium offering plan (the "Plan") with the Office of the New York State Attorney General

pursuant to New York General Business Law §§ 352-e – 352-eeee.  Attached to the Plan were

drafts of a unit deed and the Sponsor's declaration of Condominium ("Draft Declaration").[4]  The

---

based on our reversal of the district court's judgment in the lead appeal, we DENY Plaintiffs'
related appeal, Docket No. 10-5230-cv, as moot.

[3] Under ILSA, a sponsor must file with HUD a statement of record, containing a property report,
prior to selling or leasing any units in a proposed condominium development.  *See* 15 U.S.C. §§
1703(a)(1)(A), 1706.  The property report must then be furnished to any purchaser or lessee prior
to the execution of any contract for the sale or lease of a unit, and if the sponsor fails to follow
this procedure, the purchaser or lessee may revoke the contract within two years from the date of
signing.  *See id.*, § 1703(a)(1)(B); 24 C.F.R. § 1710.105(c).  It is undisputed here that the
Sponsor correctly filed a statement of record with HUD, Joint Appendix ("J.A.") 323-24, 368-69,
and provided Plaintiffs with a copy of the property report, J.A. 319, 362.

[4] Under New York law, a parcel of real property becomes a condominium by filing a declaration
pursuant to New York Real Property Law § 339-n.  *See Schoninger v. Yardarm Beach
Homeowners Ass'n, Inc.*, 523 N.Y.S.2d 523, 526-27 (2d Dep't 1987).  In the ordinary course, a
declaration is not filed until construction of the condominium is complete because it is only at
that point that new tax numbers can be assigned to the property.  *See* N.Y. Real Prop. L. § 339-p.

4

Plan contained a detailed description of each unit in the Brompton, identifying the dimensions and locations of all rooms and windows, the floor plan, the location of the unit within the building, and the direction the unit faced. The Draft Declaration included a metes and bounds description of the Brompton and indicated, *inter alia*, the specific tax lots on which the building was to be erected.

At some time prior to May 2008, Plaintiffs received from the Sponsor the property report and the Plan for the Brompton. In May 2008, Plaintiffs entered into an agreement (the "Agreement") with Defendants to purchase Unit 20A in the Brompton for $3.4 million. At the time Plaintiffs executed the Agreement, the Brompton was under construction; the building was not finished until January 2009. The Agreement incorporated by reference the Plan as well as the Draft Declaration. Under the Agreement's terms, Plaintiffs were to pay $340,000 upon signing, another $340,000 by November 2008 or on the date of closing, whichever was earlier, and the balance of the price at closing. The Agreement indicated that these two $340,000 sums constituted the deposit. In the event of Plaintiffs' default, Section 12(b) of the Agreement stated that the Sponsor could cancel the Agreement and, "as its sole remedy, shall have the right, subject to the provision of Section 12(d) below, to retain, as and for liquidated damages, the Deposit and any interest earned on the Deposit." Section 12(d) of the Agreement provided:

> Notwithstanding the foregoing, if and only to the extent that the sale of the Residential Units is not exempt from the provisions of [ILSA], the amount of the Deposit to be retained by Sponsor upon Purchaser's failure to cure a default . . . will be the greater of (i) fifteen (15%) percent of the Purchase Price (excluding any interest owed) or (ii) the amount of damages incurred by Sponsor due to the default . . . .

Section 31 specifically prohibited Plaintiffs from recording the Agreement.

---

Consistent with this procedure, the Sponsor filed its declaration in February 2009 after construction of the Brompton was finished.

In December 2008, the parties amended the Agreement to permit the second $340,000 deposit to be paid in two separate installments of $170,000. Plaintiffs paid the first installment but failed to pay the second. In aggregate, therefore, Plaintiffs paid $510,000 as a deposit, or 15% of the purchase price. In March 2009, the Sponsor notified Plaintiffs by letter that it was exercising its right to cancel the Agreement and to retain the $510,000 deposit, which the Sponsor demanded be released by the Escrow Agent. Plaintiffs objected and challenged the Sponsor's cancellation with the Office of the New York Attorney General. *See* N.Y. Comp. Codes R. & Regs. tit. 13, § 20.3(o)(3)(viii)(a). In January 2010, the Attorney General issued a decision finding that Plaintiffs had defaulted on the Agreement and that the Sponsor was entitled to the release of Plaintiffs' $510,000 deposit. That same month, the Escrow Agent released the deposit to the Sponsor. In July 2009, however—four months after the Sponsor had informed Plaintiffs of its cancellation of the Agreement—Plaintiffs had notified the Sponsor that they were revoking the Agreement pursuant to ILSA. Plaintiffs asserted that the Agreement (1) failed to provide an adequate description of the property in violation of 15 U.S.C. § 1703(d)(1), and (2) contained an invalid liquidated damages clause in violation of 15 U.S.C. § 1703(d)(3). Defendants rejected Plaintiffs' purported revocation.

In August 2009, Plaintiffs brought the present action seeking both a declaration that they had validly revoked the Agreement pursuant to 15 U.S.C. § 1703(d) and also an award of $510,000 in money damages, the amount paid as a deposit. Following discovery both parties moved for summary judgment. In October 2010, the district court entered judgment for Plaintiffs, holding that they were entitled to revoke the Agreement. The court reached this conclusion on grounds not explicitly advanced by the parties. Relying exclusively on the language of § 1703(d), the court held that "[r]ead in context, the statute requires that the

6

description [of the lot] be included in a document that is in a form capable of being recorded," and because here, Plaintiffs' Agreement for the purchase of Unit 20A in the Brompton was not recordable under New York law, the court concluded that the Agreement was subject to revocation under ILSA. Defendants appealed.

## DISCUSSION

We review a grant of summary judgment *de novo* and will affirm "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (internal quotation marks and alteration omitted); *see* Fed. R. Civ. P. 56(a).

Although Plaintiffs prevailed below, they do not expend considerable effort defending the lower court's interpretation of 15 U.S.C. § 1703(d), which, as already noted, did not rest on any argument squarely advanced by Plaintiffs. Instead, Plaintiffs reiterate the same points they raised below—namely, that the Agreement is revocable because it failed to provide an adequate description of the property in violation of 15 U.S.C. § 1703(d)(1) and because it contained an invalid liquidated damages clause in violation of 15 U.S.C. § 1703(d)(3). Defendants, by comparison, object to both the district court's and Plaintiffs' construction of § 1703(d) and assert that the Agreement satisfied fully the requirements of ILSA. The parties do agree that if we reject the district court's construction of § 1703(d), we should nonetheless reach the merits of their other arguments. We turn first to the district court's construction of § 1703(d), and then address the parties' competing interpretations of the statute.

7

I.	The District Court's Decision

The district court's holding rested solely on the language of § 1703(d), which provides:

> Any contract or agreement which is for the sale or lease of a lot . . .
> and which does not provide --
>
>> (1) a description of the lot which makes such lot clearly
>> identifiable and which is in a form acceptable for recording
>> by the appropriate public official responsible for
>> maintaining land records in the jurisdiction in which the lot
>> is located;
>
>> may be revoked at the option of the purchaser or lessee for two
>> years from the date of the signing of such contract or agreement.

15 U.S.C. § 1703(d)(1).  The district court interpreted this language to require "that the description [of the lot] be included in a document [i.e., the contact or agreement] that is in a form capable of being recorded."  It reasoned that because "no provision of New York law . . . would permit the recording of a stand-alone description of real property," Congress must have intended that the "form acceptable for recording" clause in § 1703(d) refers to the underlying contract or agreement, not to the description of the lot itself.  The court observed that under New York law, however, for an executory contract for the sale of real property, like the Agreement, to be recordable, it must, *inter alia*, be "acknowledged or proved."  *See* N.Y. Real Prop. L. § 294(1).  Because it is undisputed that the Agreement failed to satisfy this requirement, the court held that the "Agreement, containing the description, was not in recordable form and [wa]s subject to rescission under section 1703(d)(1) of ILSA."  The court noted as well that the anti-recordation provision in Section 31 of the Agreement confirmed that the Agreement was not recordable.

With great respect to the district court, we reject this interpretation.  The phrase "which is in a form acceptable for recording" in § 1703(d)(1) modifies the word "description" at the beginning of that same sentence, not the more distant nouns "contract or agreement" located in

8

the prior section. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (observing that under the grammatical "rule of the last antecedent," any limiting clause or phrase should be read as modifying only the noun or phrase that it immediately follows); *accord Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) (holding that under "basic rules of grammar and punctuation," the qualifying phrase in question modified only the "immediately antecedent" clause and not the "more remote" clause). The most natural reading of § 1703(d)(1), therefore, is that a "contract or agreement" may be revocable within two years of the date of signing if that document does not include a *description* of the lot in question which (1) "makes such lot clearly identifiable" *and* (2) "is in a form acceptable for recording." Whether the contract or agreement itself is "in a form acceptable for recording" is immaterial.

Additionally (and contrary to the district court's reasoning), that a description of a lot standing alone may not be recordable under New York law does not compel a different construction of § 1703(d)(1). The district court read into the statute language that is not there. Section § 1703(d)(1) does not require that the description of the lot be *a recordable document*, only that it be "*in a form acceptable for recording.*" Congress could have mandated more clearly that revocation of a purchase agreement under ILSA turns on the recordability of the lot description—for example, by including language that the description "must be in a recordable document"—but it chose not to. *See Dodd v. United States*, 545 U.S. 353, 357 (2005) (observing that courts must presume that Congress "says in a statute what it means and means in a statute what it says") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *accord Phong Thanh Nguyen v. Chertoff*, 501 F.3d 107, 114 (2d Cir. 2007). Congress required instead that the lot description be "in a form acceptable for recording," a phrase to which we turn and

9

interpret in the next section. The district court's interpretation fails to give effect to this plain language.

Finally, reading § 1703(d)(1) to require that the *description* of a lot—and not the agreement or contract—be "in a form acceptable for recording" aligns with ILSA's underlying purpose. One of the core functions of ILSA is "to prevent false and deceptive practices in the sale of . . . land by requiring developers to disclose information needed by potential buyers." *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 778 (1976); *see Bodansky v. Fifth on the Park Condo, LLC*, 635 F.3d 75, 80 (2d Cir. 2011) (observing that ILSA was enacted in response to an epidemic of unscrupulous marketing and sale of undeveloped subdivided land and was designed to "require[] full disclosure to buyers of [such] land"); *accord Long v. Merrifield Town Ctr. L.P.*, 611 F.3d 240, 245 (4th Cir. 2010); *Winter v. Hollingsworth Props., Inc.,* 777 F.2d 1444, 1446-47 (11th Cir. 1985). Construing § 1703(d)(1) to mandate that the description of a lot in a contract or agreement be clear and specific enough to satisfy generally the local recording statutes "in the jurisdiction in which the lot is located," § 1703(d)(1), furthers this goal because it guarantees that developers provide potential buyers with the information they need to make an informed decision about their purchase. *See Long*, 611 F.3d at 245. By comparison, interpreting the statute to require that the contract or agreement satisfy the technical requirements for recordability in the applicable local jurisdiction does not further this purpose.

For the foregoing reasons, we conclude that under 15 U.S.C. § 1703(d)(1), the "description of the lot" in the underlying contract or agreement—and not that contract or agreement itself—must be "in a form acceptable for recording" in the "jurisdiction in which the lot is located."

10

II. Whether the Agreement Satisfies ILSA

Although we could, at this juncture, remand to the district court for further proceedings, the parties urge us to rule on whether under 15 U.S.C. § 1703(d)(1) the description of Unit 20A in the Agreement was "in a form acceptable for recording" and whether the Agreement's liquidated damages clause violates § 1703(d)(3)—issues that were left unresolved below. While generally we decline considering arguments not addressed by the district court, *see Singleton v. Wulff*, 428 U.S. 106, 120 (1976), this is a prudential rule we apply at our discretion, *see Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418-19 (2d Cir. 2001) ("It follows therefore that we have discretion to consider issues that were raised, briefed, and argued in the District Court, but that were not reached there."). In determining whether to consider such issues, we rely on a number of factors, including the interests of judicial economy, *see Petrosino v. Bell Atl.*, 385 F.3d 210, 224 (2d Cir. 2004), and whether the unaddressed issues present pure questions of law, *see Booking*, 254 F.3d at 419. Both factors are satisfied here. Remanding the matter for further consideration would be inefficient because the issues were fully briefed and argued in the district court. In addition, these issues present clear questions of law concerning the proper statutory interpretation of ILSA. We thus turn to the merits of the parties' arguments.

i. Section 1703(d)(1)

Plaintiffs advance a novel but ultimately unavailing argument for why the description of Unit 20A in the Agreement failed to satisfy 15 U.S.C. § 1703(d)(1). Relying principally on Congress' use of the word "form" in the phrase, "in a *form* acceptable for recording," Plaintiffs contend that, to comply with § 1703(d)(1), the description of the lot must be set forth in a specific document—a "form"—that is recordable in the relevant jurisdiction. They maintain that, in New York, that "form" is the unit deed (which they identify as New York's "unit

11

description clause"), and because New York's Condominium Act mandates that a condominium unit deed contain "the liber, page and date of recording of the declaration," N.Y. Real Prop. L § 339-o, for a description of the lot to be "in a form acceptable for recording," the description must include this particular information. Because the draft unit deed attached to the Plan (and incorporated by reference in the Agreement) did not contain this information, Plaintiffs assert that the Agreement failed to comply with 15 U.S.C. § 1703(d)(1). Alternatively, Plaintiffs argue that even if the description of the lot need not contain the information required for recording a unit deed under state law, the description provided in the Agreement was insufficient because it inaccurately described the Brompton and the unit that Plaintiffs agreed to purchase. Defendants counter that Plaintiffs' construction of § 1703(d)(1) contradicts the statutory language and the applicable regulations and that their challenge to the accuracy of the description provided in the Agreement is without merit.

We find Plaintiffs' arguments to be unpersuasive. They assume that, under § 1703(d)(1), the description of the lot contained in the purchase contract or agreement must be identical to the property specifications contained in the deed ultimately used to convey the unit. Indeed, they posit—without reference to any supporting authority—that New York Real Property Law § 339-o "sets forth [what] a valid condominium unit description [should] include[]." Pls.' Br. at 34. But nothing in § 1703(d)(1) suggests that Congress intended that the description of the lot mandated under ILSA be coextensive with what is required for conveyance of an individual unit in the relevant jurisdiction. As already discussed, the plain language of § 1703(d)(1) requires only that the description of the lot be "in a form acceptable for recording"—it does not require that the description be "in a form acceptable for recording" as *the deed* for the lot. ILSA's origins confirm that Congress was concerned with disclosure, *not* conveyance. By enacting

12

ILSA, Congress sought to curtail rampant misleading advertising and sale of undeveloped subdivided land by creating a national standard to guarantee full disclosure for the benefit of prospective buyers, not to harmonize local requirements for the conveyance of undeveloped lots. *Cf. SEC v. DiBella*, 587 F.3d 553, 572 (2d Cir. 2009).

Even if the plain language of § 1703(d)(1) did not demonstrate the weakness in Plaintiffs' argument, their construction of the statute contradicts industry practice as well as other ILSA provisions. The Real Estate Board of New York represents that, as in other jurisdictions, it is common in New York for sponsors to offer units for sale and to enter into purchase agreements for those units prior to the filing of the condominium declaration. Real Estate Bd. of N.Y. Br. at 11. And because a condominium declaration ordinarily cannot be filed until new tax lot numbers are assigned to each unit, which can only occur once construction is complete, *see* N.Y. Real Prop. L. § 339-p, buyers often will execute purchase agreements before the declaration is recorded, i.e., prior to completion of the development. Plaintiffs' interpretation would prohibit this common and long-standing practice. If, as Plaintiffs urge, the description of the lot must be in a form acceptable for recording the deed, then a purchase agreement for a unit could be executed only after construction was finished because it is only at that point that the declaration would be recorded, and thus that the "liber, page and date of recording of the declaration"— required for a deed, *see* N.Y. Real Prop. L. § 339-o—would be obtainable. Nothing in ILSA suggests that Congress intended this outcome. To the contrary, other provisions of the statute confirm that Congress was aware of the practice of pre-completion sales and contemplated that the description of a unit required under § 1703(d)(1) may not be adequate for conveyance.

For example, ILSA distinguishes explicitly between a "subdivision" and a "lot," defining the former as "land which . . . is divided or is proposed to be divided into lots . . . for the purpose

13

of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3). The statute also requires that in the statement of record filed with CFPB, the sponsor must include "copies of the deed or other instrument establishing title to the subdivision," "a legal description of, and a statement of the total area included in, the subdivision," and "a map showing the division proposed and the dimensions of the lots to be covered by the statement of record and their relation to existing streets and roads." 15 U.S.C. §§ 1704(a), 1705(2), 1705(8). Two conclusions flow from these provisions. First, that a subdivision is defined as land that "is divided *or is proposed to be divided* into lots . . . for the purpose of sale" suggests that Congress recognized that the lot a purchaser contracts to buy may or may not exist at the time the contract for sale is executed. And because a lot may merely be "proposed" and not yet in existence at the time the contract is executed, Congress understood that the description of the lot in the purchase agreement may not be in a form acceptable for recording a deed since, by definition, conveyance of the lot would be impossible under such circumstances. Second, that the statement of record must include a "legal description" of the subdivision (i.e., one "made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat," *Black's Law Dictionary* § 18(c) (9th ed. 2009)), but that a lot, on the other hand, can be identified based only on its "dimensions" and its "relation to existing streets and roads," confirms that Congress understood that an individual lot would not be amenable to the same type or extent of description as the larger subdivision of which it was a part.[5] For these reasons, we decline to adopt

---

[5] Because 15 U.S.C. § 1703(d)(1) is unambiguous, we need not rely on the agency's implementing regulations. *See Lopez v. Terrell*, 654 F.3d 176, 181 (2d Cir. 2011) (affirming the well-established rule that under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), deference to the agency's interpretation is warranted only if the statute is ambiguous). That those regulations undermine Plaintiffs' construction of the statute is nevertheless significant. Among other things, HUD requires that the property report, which the sponsor is required to provide to all potential purchasers, must indicate whether the "plats

14

Plaintiffs' construction of 15 U.S.C. § 1703(d)(1). By its plain language, the description of the lot need not be equivalent to the type of description required to convey the unit.

Having rejected Plaintiffs' interpretation, we arrive at our ultimate inquiry: whether under 15 U.S.C. § 1703(d)(1) the actual description of the lot provided in the Agreement was in a form acceptable for recording. Defendants urge that the description here satisfied ILSA because the description was sufficiently detailed to be in a form acceptable for recording under New York law. They observe that the Agreement identified the apartment Plaintiffs purchased as Unit 20A; that the Plan attached to the Agreement delineated Unit 20A on the condominium's floor plans and contained a specific floor plan of that particular unit; and that the unit's floor plan indicated the dimensions and locations of the rooms and windows, the location of the unit within the building, and the direction the unit faced. Plaintiffs do not argue that this description is

---

covering the lots in th[e] Report [have] been recorded," 24 C.F.R. § 1710.109(g)(1)(ii), and if they have not, the report must state whether "the description of the lots given in th[e] Report [is] legally adequate for the conveyance of land in the jurisdiction where the subdivision is located," *id.* Significantly, if the description is *not* sufficient for conveyance, the sponsor must "include a statement [in the Report] to the effect that the description of the lots is not legally adequate for the conveyance of the lots and that it will not be until the plat is recorded." *Id.* Similar to the statutory language, therefore, HUD's regulations confirm that the agency, like Congress, understood that the description of a lot in the purchase contract may not—and indeed, need not—be adequate for conveyance of the unit. Here, the Sponsor complied fully with these regulatory requirements. The property report Plaintiffs received stated explicitly:

> **NEITHER THE FLOOR PLANS NOR THE DECLARATION HAVE BEEN SUBMITTED TO THE [REAL PROPERTY ASSESSMENT BUREAU OF THE CITY OF NEW YORK]. UNTIL THE FLOOR PLANS ARE FILED AND THE DECLARATION IS RECORDED THE DESCRIPTION OF THE UNITS IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE UNITS. THEREAFTER EACH UNIT WILL BE LEGALLY DESCRIBED BY REFERENCE TO ITS UNIT AND TAX LOT NUMBER AS SET FORTH IN THE RECORDED DECLARATION AND FILED FLOOR PLANS.**

J.A. 107 (bolding and capitalization in original).

15

inadequate, nor do they challenge Defendants' assertion that if set forth in an appropriate instrument, the description could be recorded. Rather, Plaintiffs' sole contention is that the description in the Agreement is inaccurate, and for that reason, fails to satisfy § 1703(d)(1). We disagree.

Plaintiffs rely on an inconsistency between the Draft Declaration incorporated by reference in the Agreement and the actual declaration filed by the Sponsor in February 2009. They note, in particular, that the former stated that parcel one of the proposed Brompton condominium—which was erected on three existing parcels of real property—would occupy only the "volume of space . . . which lies above the horizontal plane having elevation 90.52 feet" above ground level, whereas the latter indicated that the Brompton would occupy all of the space in that parcel that lay above *and below* that same horizontal plane. J.A. 165, 179-83. Although our review of the record confirms this inconsistency, it is immaterial. At most, the variance Plaintiffs identify is a clerical error. Indeed, other documents included in the Plan make clear that the Brompton would occupy all of the space in the parcel in question. Moreover, satisfaction of § 1703(d)(1) turns on the adequacy of the description of the individual lot, not the subdivision as a whole. Because Plaintiffs' twentieth floor apartment was not part of the ground-level area omitted from the description of the Brompton provided in the Draft Declaration, any misidentification of the building had no effect on the description of Plaintiffs' unit.

In the absence of any tenable argument suggesting otherwise, we conclude that the description of the lot in the Agreement was in a form acceptable for recording, thus complying with 15 U.S.C. § 1703(d)(1). Indeed, Plaintiffs altogether fail to identify any material information omitted from the description provided by the Sponsor in the Agreement that, by their account, would have made the description otherwise unacceptable for recording. In this respect,

16

therefore, we emphasize again that the Agreement contained a copy of the Draft Declaration.

And while that document was not yet recorded at the time the Agreement was executed, because

construction of the Brompton was ongoing, the Draft Declaration contained all of the descriptive

information required under state law to create the condominium.[6] *See* N.Y. Real Prop. L. § 339-

n. For this reason, the description provided to Plaintiffs in the Agreement was undoubtedly "in a

form acceptable for recording," because as the record demonstrates, it was that description that

was ultimately recorded. Plaintiffs' claim for revocation of the Agreement under § 1703(d)(1) is

thus unavailing.

    ii.    Section 1703(d)(3)

Alternatively, Plaintiffs assert that the Agreement is revocable under ILSA because the

liquidated damages clause violates 15 U.S.C. § 1703(d)(3). That section provides that a contract

for the sale or lease of a lot can be revoked within two years of the signing date if the contract

---

[6] Under New York law, a condominium declaration must contain, *inter alia*:

> 2. Description of the land on which the building and improvements are or are to be located.
>
> 3. Description of the building, including the location of the building by reference to fixed monuments or tax map parcel data, stating the number of stories, basements and cellars, the number of units and the principal materials of which it is or is to be constructed.
>
> 4. The unit designation of each unit, and a statement of its location, approximate area, number of rooms in residential areas, and common element to which it has immediate access, and any other data necessary for its proper identification.
>
> 5. Description of the common elements and a statement of the common interest of each unit owner.

N.Y. Real Prop. L § 339-n. Here, the Draft Declaration, which was incorporated by reference in the Agreement, contained all of this required information.

fails to indicate that in the event of the purchaser's default or breach, the seller can retain only the greater of (a) 15% of the purchase price of the lot, excluding interest owed, or (b) the damages incurred by the seller for the purchaser's default. 15 U.S.C. § 1703(d)(3). Here, section 12(b) of the Agreement stated that if Plaintiffs defaulted, the Sponsor could elect to cancel the Agreement and "as its sole remedy, shall have the right, *subject to the provision of Section 12(d) below*, to retain, as and for liquidated damages, the Deposit." J.A. 74 (emphasis added). Section 3.1 of the Agreement provided that the "Deposit" consisted of the two initial payments of $340,000, totaling $680,000, or 20% of the purchase price. Section 12(d) of the Agreement—which, as indicated, was referenced explicitly in Section 12(b)—clarified:

> Notwithstanding the foregoing, if and only to the extent that the sale of the Residential Units is not exempt from the provisions of the Interstate Land Sales Full Disclosure Act, the amount of the Deposit to be retained by Sponsor upon Purchaser's [default] . . . will be the greater of (i) fifteen percent (15%) of the Purchase Price (excluding any interest owed) or (ii) the amount of damages incurred by Sponsor due to the default.

Without question, therefore, section 12(d) of the Agreement made clear that, to the extent the Agreement was subject to ILSA, in the event of Plaintiffs' default the amount the Sponsor could retain as liquidated damages was 15% of the purchase price or actual damages incurred, whichever was greater.

Plaintiffs concede, as they must, that in light of section 12(d), the Agreement was consistent with 15 U.S.C. § 1703(d)(3). They assert, nonetheless, that the "deceptive" phraseology of sections 12(b) and 12(d) of the Agreement failed to apprise them of their rights, thus violating ILSA. We reject this argument as unfounded. The language of the contract is clear: insofar as ILSA applies, the liquidated damages for Plaintiffs' breach shall be capped at the greater of 15% of the total purchase price or actual damages as a result of the default. Even

18

if we had any doubt on this point (and we do not), Plaintiffs' argument is, in the end, purely academic. Under the 2008 amendment to the Agreement, the second $340,000 installment, comprising the second half of the deposit, was divided into two payments of $170,000, of which Plaintiffs paid only the first. Their actual deposit, therefore, was $510,000—namely, 15% of the purchase price—and the Defendants have not sought damages in excess of that amount.

## CONCLUSION

For the foregoing reasons, we conclude that the purchase agreement is consistent with 15 U.S.C. § 1703(d)(1) and (3), and thus Vasilis Bacolitsas and Sofia Nikolaidou's claim for revocation of the agreement under ILSA fails as a matter of law.

We therefore REVERSE the judgment of the district court and REMAND with instructions to enter judgment for Defendants. Given this disposition, we DISMISS the appeal in Docket No. 10-5230-cv as moot.